| | |
|---|---|
| MARION I. HOWELL, and FRANCIS L. HOWELL, | CV 13-48-BU-DWM-JCL |
| Plaintiffs, | |
| vs. | FINDINGS AND RECOMMENDATION |
| TRAVIS EARL, individually and as agent of Gallatin County Sheriff's Department, State of Montana, KELLI MUNTER, individually and as agent of Gallatin County Sheriff's Department, State of Montana, SCOTT SECOR, individually and as agent of Gallatin County Sheriff's Department, State of Montana, JAMES ANDERSON, individually and as agent of Gallatin County Sheriff's Department, State of Montana, DAVID JOHNSTON, individually and as agent of Gallatin County Sheriff's Department, State of Montana, JAMES CASHELL, individually and as agent of Gallatin County Sheriff's Department, State of Montana, GALLATIN COUNTY, a political subdivision of the State of Montana, MICHAEL WALRATH, individually and as agent of Montana Highway Patrol, State of Montana, JAMES SULAGES, individually and as agent of the Montana Highway Patrol, State of Montana, JUSTIN BRAUN, individually and as agent of Montana Highway Patrol, MIKE TOOLEY, individually and as agent of Montana Highway Patrol, State of Montana, STATE OF MONTANA, and JOHN DOES I-X, | |
| Defendants. | |

This matter is before the Court on the Fed. R. Civ. P. 12(b)(6) motion of Defendants Mike Tooley, Michael Walrath, James Sulages, and Justin Braun requesting dismissal of the claims under Montana law advanced against them individually by Plaintiffs Marion and Francis Howell. Defendant Tooley also seeks dismissal of the Howells' claims advanced against him under 42 U.S.C. § 1983. For the reasons discussed, the Court recommends the motion be granted.

**I.      BACKGROUND**

The following description of this case is taken from Plaintiffs Marion and Francis Howell's allegations in their First Amended Complaint, and the description does not constitute conclusive findings of fact. The Howells allege as follows:

On June 26, 2011, the Howells' son, Shapleigh Howell, was allegedly involved in a single motor vehicle accident which occurred on a road in the area between Belgrade and Manhattan, Montana. The vehicle involved in the accident left the roadway and collided with a trailer that was located in the road right of way.

Several law enforcement officers from the Gallatin County Sheriff's Department and the Montana Highway Patrol ("MHP") – many of the individuals named as Defendants in this action – responded to a 911 call regarding the

accident. The responding officers all converged at the scene of the accident to investigate, and this lawsuit arises from the officers' conduct during that investigation.

The Howells' house was approximately a quarter of a mile from the location of the accident. The law enforcement officers' investigation apparently led them to the Howells' house where they found Francis Howell outside the house standing near his vehicle, and Marion Howell was inside the house. The officers proceeded to question the Howells about the accident.

The law enforcement officers questioned Francis Howell first. For reasons unknown, the officers handcuffed him and placed him under arrest. A short time later the officers decided not to arrest Francis and removed the handcuffs. But for reasons unknown, the officers changed their minds again, handcuffing Francis a second time, and placing him in one of the law enforcement patrol cars.

Once again, however, the officers decided not to arrest Francis, removed him from the patrol car and released him from the handcuffs.

Francis asserts the officers never explained to him why he was arrested either time. And Francis was never charged with any criminal offense. He claims he sustained injury to his right shoulder and both wrists as a result of the encounter.

Sheriff deputy Scott Secor and MHP officer James Sulages then entered the Howells' home and questioned Marion. Sulages informed Marion he was recording their conversation. Marion asserts she was scared, that she felt compelled to comply with the officers, and she felt she could not remove herself from the officers' allegedly intimidating interrogation. Marion alleges she was, in effect, in the custody of the officers, but that the officers did not advise Marion of her rights. Marion asked several times to consult with an attorney, but the officers ignored her requests.

While questioning Marion, Sulages and MHP officer Justin Braun directed her to accompany them to the accident scene in a patrol car. Marion again felt compelled to comply with the officers' demands.

Following the events on June 26, 2011, MHP officer Michael Walrath charged Marion with the criminal offense of obstructing justice. Ultimately, however, the charge was dismissed.

The Howells' First Amended Complaint includes claims against Defendant Mike Tooley, the Chief of the MHP. Although the parties agree Tooley did not personally interact directly with the Howells (doc. 22 at 5), they nonetheless assert he is personally liable for his alleged inactions. They allege he failed to implement and enforce necessary written policies, and failed to train his

4

subordinate officers relative to specific procedures and situations that MHP officers Walrath, Sulages and Braun faced during the course of their encounter with the Howells. The Howells also allege Tooley failed to properly supervise and control those patrol troopers. They assert Tooley's failures caused Walrath, Sulages and Braun to violate the Howells' various rights, and that Tooley knew, or should have known, that his conduct and inaction would lead to the violation of the Howells' rights. Further, the Howells allege Tooley is liable for his "acquiescence in the constitutional violations by" his subordinates. (Doc. 28 at ¶ 124.)

The Howells commenced this action seeking compensation for the injuries they allegedly sustained as a result of Defendants' conduct during their investigation of the June 26, 2011 motor vehicle accident. They advance claims under 42 U.S.C. § 1983 against Defendants for their alleged use of excessive force, for their unlawful arrests, searches and prosecution, and for their violations of the Howells' rights to due process.

Additionally, the Howells advance claims under Montana law against all the Defendants. They assert Defendants are liable for false arrest, malicious prosecution, negligence, gross negligence, negligence per se, negligent and intentional infliction of emotional distress, acting in concert, defamation, and

violations of the Howells' rights protected under the Montana Constitution.

## II. APPLICABLE LAW

### A. Fed. R. Civ. P. 12(b)(6) - Motion to Dismiss Standards

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A dismissal for failure to state a claim under Rule 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990).

To survive a motion to dismiss, a plaintiff's complaint must include sufficient facts "to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Id*. Plausibility does not equate with "probability," and it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Factual allegations

"that are 'merely consistent with' a defendant's liability" do not cross the line between possibility and plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). Also a plaintiff must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In considering a motion to dismiss, the court accepts all factual allegations in the complaint as true, and construes the pleadings in the light most favorable to plaintiffs. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). Nonetheless, conclusory allegations and unwarranted inferences are insufficient to survive a motion to dismiss. *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). Even a liberal interpretation of a civil rights complaint may not supply essential factual elements of a claim that the plaintiff failed to plead initially. *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982). Also, the court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

### B. Application of Montana Law

In view of the Howells' claims under federal law, jurisdiction over the

claims they advance under Montana law is founded upon the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a). "[A] federal court exercising supplemental jurisdiction over state law claims is bound to apply the law of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052, 1055 n.2 (9th Cir. 2000). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980).

### III. DISCUSSION

#### A. The 42 U.S.C. § 1983 Claims Against Tooley

The Howells bring this action against Michael Tooley individually in his capacity as Chief of the MHP. Although Tooley had no direct interaction with the Howells, they nonetheless assert he is liable under 42 U.S.C. § 1983 for his alleged personal conduct. For the reasons discussed, however, the Court agrees with Tooley's motion and concludes that the section 1983 claims pled against him should be dismissed.

Supervisory officials like Tooley "may not be held liable [under section 1983] for the unconstitutional conduct of their subordinates under a theory of

*respondeat superior.*" *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (italics in original). Rather, supervisory officials can only be held liable under section 1983 if they themselves personally violated a constitutional right. *Id*. 556 U.S. at 683. A supervisor may be liable:

> if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.

*Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quotation and citation omitted).

Thus, although a supervisor need not be physically present at the time a constitutional violation occurs, to impose liability against that supervisor a plaintiff must establish that the supervisor engaged in some "culpable action, or inaction," that caused the constitutional violation committed by his or her subordinates. *Starr*, 652 F.3d at 1205 (citing *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). To do so, a plaintiff must establish that the supervisor acted with "deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id*. 652 F.3d at 1207. *See also Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Ultimately, a plaintiff must show that a supervisor's conduct was the

9

proximate cause of the plaintiff's injury, i.e. that there is a "sufficient causal connection" between the supervisor's conduct and the violation of a constitutional right inflicted by a subordinate. *Starr*, 652 F.3d at 1207. Thus, the Ninth Circuit has summarized the general circumstances in which a supervisory official could be held liable:

> (1) for setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others."

*Moss v. United States Secret Service*, 675 F.3d 1213, 1231 (9th Cir. 2012) (citations omitted).

Here, the Howells allege Tooley failed to implement numerous policies which would have protected them against Walrath, Sulages and Braun's alleged violations of their constitutional rights. But to prevail on a section 1983 claim against a supervisory official for a failure to implement certain policies and for a failure to properly train a subordinate relative to those policies, the plaintiff "must show that [the supervisor's] failure to train amounted to deliberate indifference[]" to the need for more or different policies and training. *Canell v. Lightner*, 143 F.3d 1210, 1213 (9th Cir. 1998). A supervisor can be liable for failing to create

10

necessary policies and failing to train subordinates when:

> in light of the duties assigned to specific officers or employees, the need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the [supervisor]... can reasonably be said to have been deliberately indifferent to the need.

*Clement v. Gomez*, 298 F.3d 898, 905 (9th Cir. 2002) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The factual allegations must demonstrate that a supervisor's failure to implement policies and to train subordinates was the result of "a deliberate or conscious choice to follow a course of action ... from among various alternatives" available to the supervisor. *Clement*, 298 F.3d at 905 (quoting *City of Canton*, 489 U.S. at 389) (quotation marks omitted).

In this case, the Howells' substantive allegations against Tooley are very limited. They allege Tooley is liable because, as the Chief of the MHP, he failed to institute a written policy relative to seven specific circumstances identified by the Howells in their First Amended Complaint.[1] Walrath, Sulages and Braun

---

[1] The Howells allege Tooley failed to implement written policies that would have: (1) "prohibited [the troopers] from badgering, harassing, bullying, and intimidating people (like Plaintiffs) in order to extract information from them, violating their Miranda rights" (doc. 28 at ¶ 112); (2) "required [troopers] to use their readily available back-up recorders and required them to maintain properly working recording instruments" (doc. 28 at ¶ 113); (3) "prohibited [troopers] from illegally entering people's houses" (doc. 28 at ¶ 115); (4) "prohibited [troopers] from entering a person's house (like the Plaintiffs) at night for misdemeanors committed elsewhere" (doc. 28 at ¶ 116); (5) required troopers "to advise an arrestee of the cause of the arrest" (doc. 28 at ¶ 117); (6) "instructed [troopers] on

11

allegedly encountered those seven circumstances during their interactions with the Howells on June 26, 2011. The Howells' allegations suggest that if Tooley had formulated and implemented the seven identified policies, and trained the officers on those policies, he could have prevented the individual troopers from engaging in conduct that violated the Howells' constitutional rights. Therefore, the Howells contend Tooley is liable.

But the Court finds the Howells' First Amended Complaint is deficient because they have not pled any facts describing Tooley's personal culpable conduct. The allegations do nothing more than identify seven circumstances for which the Howells' contend Tooley should have implemented a written policy, but they do not include any facts describing why he should have known to implement the policies. The Howells do not allege any facts identifying prior occurrences of the seven circumstances, and they do not plead facts indicating Tooley was aware of, or had knowledge of, any such prior occurrences.

In short, the Howells simply do not present any factual information describing Tooley's conduct or inactions that would subject him to liability. Their pleading does not contain any facts plausibly suggesting Tooley was aware of an

---

the proper use of force (no excessive force)" (doc. 28 at ¶ 119); and (7) "instructed [troopers] on the [...] proper investigation of a witness-less crash" (doc. 28 at ¶ 119).

obvious need for the implementation of written policies to govern any of the seven circumstances the Howells identify, or suggesting it is factually plausible that he was deliberately indifferent to that obvious need. Nor do the Howells plead the existence of any facts suggesting Tooley was deliberately indifferent to the alleged fact that the absence of the written policies or training was likely to result in violations of individuals' rights under the United States Constitution. It is imperative that a plaintiff plead facts demonstrating the supervisor's <u>prior</u> knowledge of unconstitutional conditions, or unconstitutional conduct committed by subordinates that would give the supervisor notice of the need for changes. *See Starr v. Baca*, 652 F.3d 1202, 1208 (9th Cir. 2011). *See also Dougherty v. City of Covina*, 654 F.3d 892, 900-01 (9th Cir. 2011) (finding insufficient factual allegations pled to support a section 1983 claim against supervisory individuals).

The balance of the Howells' First Amended Complaint continues with only conclusory allegations regarding Tooley's conduct which merely mimic the bare elements of a section 1983 claim of supervisory liability. They allege Tooley "set in motion or knowingly refused to terminate" acts by others that he "knew or should have known" would result in violations of individuals' constitutional rights. (Doc. 28 at ¶ 122.) They allege Tooley is "liable for culpable action or inaction in the training, supervision and control of" his subordinates, and he is

13

"liable for [his] acquiescence in the constitutional violations by [his] subordinates." (Doc. 28 at ¶¶ 123-4.)

The Court finds the foregoing allegations lack the necessary supporting factual allegations. The Howells do not factually describe anything Tooley did to "set in motion" or to fail to terminate his subordinates' conduct. And they do not set forth any facts about Tooley's alleged conduct that constitute acquiescence. Allegations that are nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" are not sufficient to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must plead "sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates." *Hydrick*, 669 F.3d at 942 (quoting *Starr v. Bacca*, 652 F.3d 1202,1206-07 (9th Cir. 2011)). "[C]onclusory allegations and generalities" without specific factual information, and without "specific allegations regarding [a supervisory defendant's] purported knowledge of the" subordinates' unconstitutional conduct are insufficient to survive dismissal under *Iqbal* and *Twombly*. *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012).

Based on the foregoing, the Court finds the Howells' First Amended Complaint is deficient. It fails to state a section 1983 claims against Tooley upon

which relief could be granted.

### B. Claims Under Montana Law - Immunity

Chief Tooley and MHP officers Walrath, Sulages and Braun also move to dismiss the claims advanced under Montana law against them individually. They argue that pursuant to Montana law they are immune from individual liability for those claims under the circumstances of this case. The Court agrees, and the Howells concede this point.

Under the provisions of Mont. Code Ann. § 2-9-305(5), Tooley, Walrath, Sulages, and Braun are entitled to immunity from individual liability for the Howells' claims predicated upon Montana law. Section 2-9-305 provides governmental employees with immunity against state law claims as follows:

> In an action against a governmental entity, the employee whose conduct gave rise to the suit is immune from liability by reasons of the same subject matter if the governmental entity acknowledges or is bound by a judicial determination that the conduct upon which the claim is brought arises out of the course and scope of the employee's employment, unless [certain exclusions from immunity are applicable.]

Mont. Code Ann. § 2-9-305(5).

Consistent with section 2-9-305(5), the Montana Supreme Court has confirmed as follows:

> [W]here an action is brought against a [state governmental entity] based on actionable conduct by an employee, the employee is immune from

15

> individual liability for the conduct if the [state governmental entity] acknowledges that the conduct arose out of the course and scope of the employee's official duties.

*Kenyon v. Stillwater County*, 835 P.2d 742, 745 (Mont. 1992), overruled on other grounds by *Heiat v. Eastern Montana College*, 912 P.2d 787, 793 (Mont. 1996). *See also Germann v. Stephens*, 137 P.3d 545, 553 (Mont. 2006).

Here, the State of Montana expressly acknowledges that its employees – Tooley, Walrath, Sulages, and Braun – "were acting in the course and scope of their employment[]" with respect to subject matter of the Howells' First Amended Complaint. (Doc. 32 at 4.) Consequently, Tooley, Walrath, Sulages, and Braun are immune under Mont. Code Ann. § 2-9-305(5) from individual liability for the Howells' state law claims, and their motion should be granted in this respect.

The State of Montana, or course, remains obligated to pay any judgment that might be entered in favor of the Howells for the conduct of Tooley, Walrath, Sulages and Braun. Mont. Code. Ann. § 2-9-102.

Despite the immunity afforded to an individual governmental employee under Mont. Code Ann. § 2-9-305(5), the employing governmental entity would remain liable for punitive damages arising from the individual employee's conduct. *Peschel v. City of Missoula*, 2008 WL 5131369, *9-10 (D. Mont. 2008). Additionally, Walrath, Sulages, and Braun remain subject to liability under section

1983, including liability for punitive damages, if established by the Howells. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (recognizing individual liability for punitive damages under section 1983).

## IV. CONCLUSION

Based on the foregoing, IT IS HEREBY RECOMMENDED that Defendants' Tooley, Walrath, Sulages and Braun's Motion to Dismiss be GRANTED. The Howells' claims against Tooley under 42 U.S.C. § 1983, and their claims against Tooley, Walrath, Sulages and Braun advanced under Montana law should be DISMISSED.

DATED this 13th day of January, 2014.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge