IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

|  |  |
|---|---|
| MARION I. HOWELL, and FRANCIS L. HOWELL, | CV 13-48-BU-DWM-JCL |
| Plaintiffs, | ORDER |
| vs. |  |
| TRAVIS EARL, individually and as agent of Gallatin County Sheriff's Department, State of Montana, KELLI MUNTER, individually and as agent of Gallatin County Sheriffs Department, State of Montana, SCOTT SECOR, individually and as agent of Gallatin County Sheriffs Department, State of Montana, JAMES ANDERSON, individually and as agent of Gallatin County Sheriffs Department, State of Montana, DAVID JOHNSTON, individually and as agent of Gallatin County Sheriff's Department, State of Montana, JAMES CASHELL, individually and as agent of Gallatin County Sheriff's Department, State of Montana, GALLATIN COUNTY, a political subdivision of the State of Montana, MICHAEL WALRATH, individually and as agent of Montana Highway Patrol, State of Montana, JAMES SULAGES, individually and as agent of the Montana Highway Patrol, State of Montana, JUSTIN BRAUN, individually and as agent of Montana Highway Patrol, MIKE TOOLEY, individually and as agent of Montana Highway Patrol, State of Montana, STATE OF MONTANA, and JOHN DOES 1-X, |  |
| Defendants. |  |

Before the Court is the motion of Defendants State of Montana, Justin Braun, James Sulages, and Michael Walrath ("State Defendants") requesting the Court to compel discovery from, and impose sanctions against Plaintiffs Marion and Francis Howell. For the reasons discussed, the State Defendants' motion is granted in part and denied in part.

I. **Background**

The facts of this case are well known to the parties and need not be repeated in great detail here. A brief summary will suffice. On June 26, 2011, the Howells' son, Shapleigh Howell, was allegedly involved in a single motor vehicle accident which occurred on a road in the area between Belgrade and Manhattan, Montana. The vehicle involved in the accident – which was owned by Francis and Marion Howell – left the roadway and collided with a trailer located in the road right-of-way.

Several law enforcement officers from the Gallatin County Sheriff's Department and the Montana Highway Patrol ("MHP") – many of the individuals named as Defendants in this action – responded to a 911 call regarding the accident. The responding officers converged at the scene of the accident to investigate.

The Howells' house was approximately a quarter of a mile from the location

of the accident. The law enforcement officers' investigation apparently led them to the Howells' house where they had an encounter with Francis and Marion. This lawsuit has its genesis in that encounter. Francis and Marion advance civil rights claims under 42 U.S.C. § 1983, and pendant state law claims.

## II. Discussion

### A. Testimony of Shapleigh Howell

Shapleigh Howell, who law enforcement believed was driving his parents' car at the time of the underlying single motor vehicle accident, was charged criminally. When the State Defendants deposed Shapleigh as to his knowledge of the events which give rise to his parents' claims, he invoked his Fifth Amendment privilege against self incrimination. (Doc. 46-5, at 15-16). Although cast as a motion to compel, the State Defendants move in limine to preclude Shapleigh from testifying at trial based upon his refusal to answer questions at his deposition pertaining to his knowledge of those underlying events. The motion is well-taken.

A witness who invokes his privilege against self-incrimination with respect to questions asked in the course of discovery will not be allowed to later testify about the same subject matter at trial, if allowing the witness to do so would place a party to the civil litigation at a disadvantage. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 910-11 (9th Cir. 2008) (citations omitted). Shapleigh was

a percipient witness to some phases of the June 26, 2011, encounter between law enforcement and the Howell family. To allow Shapleigh to selectively testify about those events would unfairly disadvantage the State Defendants, who were precluded from legitimately cross-examining Shapleigh regarding those events at his deposition.

**B.     Plaintiffs' Initial Disclosure**

The State Defendants assert the Howells' Federal Rule of Civil Procedure 26(a)(1)(A) initial disclosure was neither complete nor timely supplemented. Specifically, the State Defendants complain the Howells failed: (1) to disclose the names and contact information of two individuals likely to have discoverable information; and (2) to provide a computation of their alleged damages, together with supporting evidentiary materials. The State Defendants request sanctions – in the form of costs and attorneys fees incurred in pursuing this aspect of their motion – be imposed against the Howells under authority of Fed. R. Civ. P. 37(a)(3)(A). And they request a sanction precluding the Howells from presenting evidence with respect to several categories of claimed damages.

1.     <u>Identities of Individuals</u>

The State Defendants argue the Howells violated the mandatory disclosure requirement of Rule 26(a)(1)(A)(i) by failing to disclose the names and contact

4

information of a minor identified as C.C. and Mike Wade. The State Defendants claim they first became aware of these two potential witnesses to the events underlying the Howells' claims during the deposition of Marion Howell.

C.C., the Howells' grandson, was apparently in the Howell residence on the night of the underlying incident, and in the immediate presence of Marion when she was interviewed by Defendant James Sulages. Mike Wade, according to Marion's deposition testimony, may have been driving the vehicle involved in the underlying single-vehicle accident.

Contrary to the State Defendants' argument, the Howells were not obligated to disclose the identities of either C.C. or Mike Wade in their initial disclosure. Rule 26(a)(1)(A)(i) and (ii) require the initial disclosure of any witness or document "that the disclosing party may use to support its claims or defense, unless the use would be solely for impeachment." This means what it says – that there is no obligation to disclose any information that the disclosing party will not use, whether the information may be favorable or unfavorable to the disclosing party's case. Advisory Committee Comment to 2000 Amendment of Fed. R. Civ. P. 26(a)(1), 192 F.R.D. 340, 385 (2000); *see also Intel Corp. v. VIA Technologies, Inc.*, 204 F.R.D. 450, 451 (N.D. Cal. 2001). And any information the disclosing party intends to use solely for impeachment need not be disclosed.

The restriction to information the disclosing party may use to support its claims or defenses does not apply, of course, to affirmative discovery requests such as interrogatories. It appears the State Defendants chose not to utilize an interrogatory to discover the identities of all individuals who were present at any point in time during the Howells' encounter with the Defendant law enforcement officers.

Undeterred, the State Defendants offer the alternate argument that the Howells were required to supplement their disclosure because during the course of Marion Howell's deposition she testified C.C. was present while Defendant Sulages was interviewing her. More specifically, Marion testified that C.C. told Sulages that he could "attest" to the fact that Francis Howell was not the person driving the accident vehicle because he was asleep in the house. (Doc. 40, at 10).

The State Defendants contend Marion's testimony confirms that she considered C.C. to have information that could support the Howells' claims. That may well be, but the fact C.C.'s testimony may be favorable to the Howells' claims does not establish they intended to call him as a witness thereby mandating his disclosure under Rule 26(a)(1)(A)(i). Importantly, when Marion identified C.C.

she was responding to cross-examination by the State Defendants' attorney.[1]

The State Defendants suggest that "common sense" application of Rule 26(a)(1) required the Howells to disclose C.C. in their initial disclosure and any argument to the contrary employs an over technical approach that conflicts with the broad goal of disclosure obligations. This argument ignores not only the plain language of Rule 26(a)(1)(A)(i) and (ii) as amended in 2000, but the evolution of the initial disclosure provision from its inception in 1993 to the 2000 amendments. *See,* 8A Fed. Practice & Proc. Civ. § 2053 (3d. Ed.).[2] The same analysis controls with respect to Mike Wade. Again, the State Defendants could have – but apparently did not – affirmatively discovered Wade's identity through the use of an interrogatory.

---

[1] Under the State Defendants reasoning, if C.C. was present during the course of Marion's interview, the State Defendants would have been obligated to disclose C.C. – at least by description – in their initial disclosure.

[2] For purposes of completeness, the Court notes that counsel for the Howells refused the State Defendants' attorney's request for C.C.'s contact information – a refusal which required the State Defendants to obtain the information through independent investigation. And the Howells' attorney – also representing C.C. – filed an ill-conceived motion for protective order precluding the State Defendants from deposing C.C. *See* Doc. 51. The Court does not condone such practice and would have awarded attorneys fees and costs to the State Defendants in responding to the motion for protective order had they asked for such an award.

## 2. Computation of Damages

The State Defendants assert the Howells' Rule 26(a)(1) initial disclosure served September 23, 2013, failed to provide a computation of their claimed damages with supporting documentation and evidentiary materials. And they contend the Howells have not timely and sufficiently supplemented that initial disclosure.

It is true the Howells' initial disclosure did not contain a computation of their claimed damages for: (1) medical costs; (2) fees and costs incurred by Marion in defending the underlying criminal action instituted against her; (3) violation of civil rights; (4) emotional distress; (5) loss of established course of life; and (6) property damage. But the State Defendants chose not to immediately seek an order compelling the Howells to provide a computation of their damage claim together with supporting evidence under authority of Rule 37(a)(3)(A). Instead, they sought damages information through affirmative discovery requests apparently served sometime in November of 2013. The sufficiency of the Howells' responses to those discovery requests – specifically Interrogatory No. 2 and Request for Production Nos. 7 – is also challenged by way of the State Defendants' motion to compel. Consequently, the Court's inquiry necessarily focuses on the sufficiency of the Howells' responses to these affirmative requests.

If the responses are sufficient, then they would satisfy the initial disclosure supplementation requirement of Rule 26(e)(1). To the extent the responses are not sufficient with respect to a particular item of claimed damage, the Howells will be precluded, under authority of Rule 37(c)(1), from pursuing that item of claimed damages unless the failure was "substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The sufficiency of the subject responses is discussed below.

C. **Affirmative Discovery Requests Regarding Damages**

The State Defendants propounded Interrogatory No. 2 and Request for Admission No. 7 to obtain discovery of information pertaining to the Howell's alleged damages. The Howells served responses to these requests on December 11, 2013. And in response to the State Defendants' motion at issue, the Howells supplemented their responses on February 12, 2014.[3]

1. <u>Interrogatory No. 2</u>

The State Defendants argue the Howells' response to Interrogatory No. 2, as supplemented, is deficient in that the Howells have not provided complete damage computations or supporting evidentiary materials for the following categories of

---

[3] In their opening brief, the State Defendants also placed Howells' response to Request for Production No. 8 at issue. The Howells' supplement to Request No. 8 appears to have resolved the dispute, as the State Defendants do not discuss that request in their reply brief.

claimed damages: (a) Marion Howell's past medical costs; (b) Francis Howell's past and future medical costs; (c) Marion Howell's cost of criminal defense; (d) loss of established course of life.[4] (Doc. 60, at 7 and 15).

      (a)    *Marion Howell's Medical Costs*

In relation to her claim for medical costs, Marion Howell initially responded to Interrogatory No. 2 by stating she was collecting her medical bills and would calculate the total cost when all bills were collected. The Howells' February 12, 2014, supplemental response to Interrogatory No. 2 provided no further information regarding medical costs purportedly incurred by Marion as a result of the underlying incident. And in her response brief, Marion fails to present any argument specifically addressing the State Defendants' motion as it pertains to her alleged medical costs. Thus, Marion has failed to provide the State Defendants information as required by Fed. R. Civ. P. 26(e), and has not argued her failure to do so was substantially justified or is harmless. As a result, Marion will be precluded, under authority of Fed. R. Civ. P. 37(b)(1) from presenting evidence or

---

[4] The State Defendants also complain the Howells did not initially disclose a computation of damages or supporting documents relative to the claims they advance for violation of their civil rights, emotional distress, and property damage. But the State Defendants do not argue that the Howells' supplemental answer to Interrogatory No. 2 is deficient with respect to these claims. Consequently, this aspect of the State Defendants' motion is properly denied.

testimony that she sustained damages in the form of medical costs.

The foregoing conclusion is subject to a caveat. The State Defendants appear to acknowledge that Marion's medical costs were disclosed to Defendant Gallatin County and the individual County Defendants. (Doc. 60, at 8-9). If the information pertaining to Marion's medical costs was conveyed by the County Defendants to the State Defendants, the Howells' duty to supplement their response regarding Marion's medical costs will have been satisfied. *See* Fed. R. Civ. P. 26(e)(1)(A) (no duty to supplement if corrective information has otherwise been made known to the other parties).

Additionally, the State Defendants contend that the information provided to the County Defendants was only Marion's "medical records" not a "computation" of those damages. But Fed. R. Civ. P. 33(d) gave the Howells the option to produce business records in answering Interrogatory No. 2 if the burden on the Defendants of deriving the answer from the records would be substantially equal to the burden on the Howells of deriving the answer from the records. The State Defendants articulate no argument as to why it was impossible for them to compute Marion's medical costs from the records provided the County Defendants.

(b) *Francis Howell's Medical Costs*

The Court reserves ruling on this aspect of the State Defendants' motion pending its entry of findings and recommendations on the State Defendants' motion for summary judgment upon Francis Howell's claims predicated upon the alleged excessive use of force.

(c) *Marion Howell's Cost of Criminal Defense*

Marion Howell's February 12, 2014, supplemental response to Interrogatory No. 2 provided, for the first time, documents pertaining to the costs incurred by her in defending against criminal charges having their genesis in the underlying incident. The State Defendants, however, assert the supplementation is incomplete because it contains unexplained discrepancies and charges. They complain that had these documents been timely produced – rather than two weeks after Marion's deposition – the discrepancies could have been explored during Marion's deposition.

According to the State Defendants, the appropriate sanction is to preclude Marion from presenting evidence of these alleged damages. Again, the Court does not condone the untimely disclosure of discoverable information. The Court, however, has discretion under Fed. R. Civ. P. 37(c) to impose other sanctions as an alternative to precluding the use of the untimely disclosed information. In view

of the limited amount of the costs of defense being sought by Marion, and the fact the information provided will allow the State Defendants to effectively cross-examine Marion, outright preclusion is not appropriate under the circumstances.

The most appropriate sanction would be an award of fees and costs incurred by the State Defendants in bringing this part of their motion. But while the State Defendants prevail upon this aspect of their motion, numerous other aspects of the motion have been denied. In considering an award of expenses under Fed. R. Civ. P. 37(a)(5) in relation to the State Defendants' motion to compel in total, the Court calls it a wash.

> (d) *The Howells' Damages for Loss of Established Course of Life*

The State Defendants are mistaken in suggesting that in every case Rule 26(a)(1)(A)(iii) requires a claimant to provide a computation of damages for loss of established course of life. Like damages for emotional distress, damages for loss of established course of life may not be amenable to the kind of calculation disclosure contemplated by Rule 26(a)(1)(A)(iii) and typically present a fact issue for the jury. *See e.g. Equal Employment Opportunity Commission v. Wal-Mart Stores, Inc.*, 276 F.R.D. 637, 639 (E.D. Wash. 2011). Contrary to the State Defendants' suggestion, *Dorn v. Burlington Northern Santa Fe Railroad*, 397 F.3d

1183 (9th Cir. 2005), does not stand for the proposition that in every case a claimant must provide a calculation of loss of established course of life damages. Certainly, as in *Dorn*, if a claimant intends to present the testimony of an "hedonic damages" expert, a calculation and supporting evidence must be disclosed. The same is true if, for instance, a claimant is seeking damages for the cost of services from a third party the claimant contends he will incur to engage in the activities he was previously able to do on his own. But nothing prevents the Howells from testifying how their abilities to engage in certain activities of life have been compromised as a result of injuries purportedly sustained in the underlying incident, and ask the jury to determine an appropriate measure of monetary compensation for that loss. This aspect of the State Defendants' motion is denied.

    **D.    Requests for Admission**

The State Defendants contend that the Howells improperly denied Request for Admission Nos. 3, 6, 11, 21, and 22. Having considered the nature and phrasing of the disputed requests, as well as the parties respective arguments, the Court concludes this aspect of the State Defendants' motion must be denied.

**III.    Conclusion**

For the reasons discussed, the State Defendants' motion is granted in part and denied in part as set forth above. The State Defendants' request for sanctions

under Fed. R. Civ. P. 26 and 37 is denied, except as set forth above with respect to Marion Howell's medical costs.

DATED this 2nd day of May, 2014.

/s/ Jeremiah C. Lynch
Jeremiah C. Lynch
United States Magistrate Judge